William E. SEWELL, Plaintiff-Appellant,

v.

The GRAND LODGE OF the INTERNA-
TIONAL ASSOCIATION OF MACHIN-
ISTS AND AEROSPACE WORKERS,
Defendant-Appellee.

No. 30537.

United States Court of Appeals,
Fifth Circuit.

July 7, 1971.

**546**

William G. McRae, Atlanta, Ga., for plaintiff-appellant.

J. R. Goldthwaite, Jr., Atlanta, Ga., Plato E. Papps, Bernard Dunau, Washington, D. C., for defendant-appellee.

Before CLARK, Associate Justice,* and GEWIN and RONEY, Circuit Judges.

GEWIN, Circuit Judge:

This appeal illustrates the recurring problem of accommodating two conflicting policies: the policy that the courts should abstain from interfering with the internal management of labor unions and the policy that the courts should protect fundamental rights of individual labor union members which Congress has denominated collectively as the "Bill of Rights of Members of Labor Organizations", under the Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 401 et seq. (1959).[1]

In this action against the Grand Lodge of the International Association of Machinists and Aerospace Workers (Union) appellant Sewell, who was employed as a Grand Lodge Representative of the defendant Union, alleges that he was wrongfully discharged from his office by the president of the Union. He asserts that he was discharged because he exercised the rights of free speech and assembly and guaranteed to him by the Act in sections 101(a) (1) and (2), 29 U.S.C. § 411(a) (1) and (2),[2] and enforced through section 609, 29 U.S.C. § 529 which makes it unlawful to discipline a member for the exercise of these statutory rights. He seeks (a) reinstatement of his employment as Grand Lodge Representative, (b) compensatory damages for losses sustained, (c) exemplary damages, and (d) other appropriate relief. The Union answered by filing a motion to dismiss contending, first, that the complaint did not state a claim upon which relief could be granted, and second, that the complaint was

---

* Associate Justice of the United States Supreme Court (Ret.), sitting by designation.

1. The appellant states the issue for review in the following language:

   The sole issue presented by this appeal is whether or not it is unlawful for a labor organization to discipline a member by discharging him as its employee for exercising his political rights of free speech, guaranteed by 29 U.S.C. Section 411(a) (2), where the Union does not suspend or expel such member from his membership in the union.

2. 29 U.S.C. § 411(a) (1) and (2) provide:
   (a) (1) Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
   (2) Freedom of speech and assembly.— Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

barred by the applicable Alabama statute of limitations of one year.[3] The district court granted the Union's motion to dismiss, concluding that Sewell's complaint failed to state a claim upon which relief could be granted.[4] We affirm the result reached, albeit for reasons not identical with those assigned by the district court.

The basic facts underlying the allegations of the complaint have been subject to lengthy inquiry and extensive review prior to this appeal. Concerning these facts no dispute appears to exist since they are discussed without contradiction by the parties; moreover, these facts as argued correspond essentially with the facts found by this court in the companion case, Nix v. N. L. R. B.[5] It appears

3. The statute upon which the Union relies is set forth in Title 7, Ala.Code § 26 (1958):

> Section 26. Limitation of one year.— The following must be commenced within one year:
>
> \*    \*    \*    \*    \*
>
> Actions for any injury to the person or rights of another, not arising from contract, and not herein specifically enumerated.

Alternatively, the Union contended that the action was barred by the federal policy of limitations stated in other federal statutes of limitations applicable to other federally created rights of action involving personal rights and employment rights. The federal statutes relied upon are the following:

> The National Labor Relations Act as amended, Section 10(b) [29 U.S.C. 160 (b)] providing for a limitation of six months upon complaints based upon unfair labor practices, including wrongful discharge; the Fair Labor Standards Act, as amended by the Portal-to-Portal Act (29 U.S.C., Section 255) providing a limitation of two years for ordinary wage and hour and overtime claims, and three years for wilful violations; and Title VII of the Civil Rights Act of 1964 [42 U.S.C., Section 2000e–5 (d)] providing a limitation of ninety days for filing of charges of discrimination in employment.

4. The reasoning of the district court is summarized by the following excerpt from the order dismissing the cause:

> Section 101 of the Labor-Management Reporting and Disclosure Act (29 U.S. C. § 411) protects the rights of members of labor unions to equal rights of membership. This includes the right to nominate candidates, to vote in elections, to attend meetings, to participate in and vote upon the business of the organization, to freedom of speech and freedom of assembly, and, generally, to be free from any improper disciplinary action that might affect the members' *right of membership*. Nothing in this

law is designed to protect the right of a member to hold office in a union. This being true, when there is a removal from office such as the office plaintiff held, that of Grand Lodge Representative, Section 101 of the Act does not protect the right to hold the office as such. In a case such as the one now before the Court, a plaintiff must, in order to state a claim upon which relief can be granted, make appropriate allegations that he has been subjected to some disciplinary action that affects his *membership* in the labor organization. Here, it is uncontroverted that Sewell was discharged as an employee for insubordination and was not discharged because of his union activity as a member, and the disciplinary action taken against him did not in any way affect his union membership. Thus plaintiff fails to state a claim upon which relief can be granted. (emphasis in original)

5. 418 F.2d 1001 (5th Cir. 1969). In *Nix* the court found the following:

> The factual background of Sewell's discharge can be summarized as follows. Sewell received a reprimand from Siemiller on December 13, 1966, because of the brevity of his weekly reports, and was discharged on January 4, 1967, for refusing to carry out the IAM Executive Council's decision to secure elimination of IAM's post convention referendum. In October and November of 1966 the staff representatives of IAM (including Sewell) were informed of the necessity of eliminating the post-convention referendum and the support required of all staff representatives in working for its defeat. Siemiller, in a letter to Sewell on December 22, 1966, stated that he had received reports that Sewell was opposing the elimination of the referendum and requested him "to report to this office if you have been advising local lodges to vote against the proposition in January; and if you have been opposing the [elimination of the] referendum, give reasons for such position." Sewell replied that he had not discussed

to be undisputed that Sewell was employed by the Union for more than fifteen years in various capacities.[6] At all times he has been a member of the union in good standing. During the particular time involved in this litigation, from 1966 until January 6, 1967, Sewell was employed by the Union in the position of Grand Lodge Representative. In this capacity it was his responsibility to perform the usual functions of the union in the field; he organized and serviced problems of the local unions, handled their grievances, and negotiated their contracts. Beyond these duties it was Sewell's primary responsibility to promote and execute the policies of the Union's Executive Council and its International President, P. L. Siemiller.

On December 22, 1966, Sewell received a letter from President Siemiller which made reference to reports that he (Sewell) was actively opposing a proposal of the executive council of the Union.[7] Since a referendum on the proposal in question was to be held in January 1967, President Siemiller in his letter requested Sewell "to report to this office if you have been advising local lodges to vote against the proposition in January; and if you have been opposing the Referendum, give the reasons for such position." Appellant responded to President Siemiller's letter that he had discussed the referendum with "many individuals in an opposing approach, not with local lodges." Following this response, on January 4, President Siemiller discharged Sewell for actively supporting the referendum and thereby refusing to carry out the decision of the Executive Council.[8] Sewell's membership in the Union was not disturbed.[9]

### Statute of Limitations

■ In view of the foregoing facts we consider first, the Union's contention that Sewell's claim is barred by the applicable Alabama statute of limitations.[10]

the referendum with local lodges, but had done so with many individual members, urging that the referendum not be eliminated. On January 4, Siemiller discharged Sewell for actively supporting the referendum and thereby refusing to carry out the decision of the Executive Council. (Footnote omitted) 418 F.2d at 1004–1005.

Dealing specifically with Sewell's discharge, the court further found:

The record clearly shows that Sewell had knowledge of the IAM's desire to have the amendment passed and its dependence upon Grand Lodge representatives (including Sewell) to support actively the amendment's passage among IAM members. With this knowledge, Sewell actively opposed the amendment. For his opposition Sewell was discharged for insubordination. 418 F.2d at 1008–1009.

6. Sewell has served as a special union representative, as an aide to the general vice president of the southern territory, as acting general vice president in charge of the union's southern territory and as Grand Lodge Representative.

7. The proposal in question sought to eliminate from the Union's constitution the requirement that all proposed amendments to the constitution must be submitted to the rank and file of the local unions for approval.

8. In his January 4th letter President Siemiller wrote as follows:

Your position, as stated in your December 27, 1966, letter, together with admitted actions, is insubordination. Therefore, for this reason, your employment with the International Union is terminated immediately upon receipt of this letter.

9. In paragraph 2 of his complaint Sewell alleges:

Plaintiff is a member of the International Association of Machinists and Aerospace Workers, and has been such at all times relevant herein, holding membership card No. X–83333.

10. In its motion to dismiss, the Union relied upon and pled the Alabama Statute of Limitations of one year. Sewell did not amend or seek to amend his complaint to meet this defense. See Ancora Corp. et al. v. Stein et al., 445 F.2d 431 (5th Cir. 1971).

The nature of Sewell's cause of action is succinctly stated in his complaint as follows:

4. This action is instituted for the purpose of obtaining appropriate relief

Initially, we note that the Act upon which the appellant relies does not contain a statute of limitations. In such circumstances federal courts must rely on the limitations period prescribed by the state in which the litigation arose; in this case, Alabama. The applicable period of limitation is that which Alabama would have enforced had an action seeking similar relief been brought in the Alabama state courts.[11] To resolve this question, we must first determine the "essential nature" of the claim under the federal law and then decide what statute of limitations the state courts of Alabama would hold applicable to this type or class of action.

The Union insists that Sewell's action is *ex delicto*, an action for injury to personal rights guaranteed by law, and, therefore, subject to the one year Alabama statute of limitations for tort actions.[12] Sewell, on the other hand, contends that his action is *ex contractu* and that the Alabama statute of limitations of six years should apply.[13] In examining these contentions we must rely on Sewell's complaint[14] and the undisputed facts, while adverting to the guide line of the Alabama Supreme Court in Adler v. Miller[15] for testing whether a cause of action is *ex contractu* or *ex delicto*:

If the cause of action given expression in the complaint (1) arises from a breach of promise, the action is *ex contractu*, or (2) if that cause of action arise from a breach of duty * * * it is in form, *ex delicto* and case.[16]

Examining Sewell's complaint we note at the outset that no mention is made of a contract.[17] He alleges membership in

---

against the defendant union on account of its malicious, wanton, and reckless disregard of rights secured to plaintiff by Sections 101(a) (1) and (2) (29 U.S.C. Sections 411(a) (1) and (2)) of said Act. 73 Stat. 522.

10. Plaintiff claims that said action of the defendant in so disciplining plaintiff was malicious, wanton, and in reckless disregard of the right secured to plaintiff as a member of said union by Section 101(a) (1) (29 U.S.C. Section 411 (a) (1)) of said Act, to possess equal rights and privileges with other members of said Association to vote in referendums of said Association as he might choose, and of plaintiff's right as such member, secured to him by Section 101(a) (2) (29 U.S.C. Section 411 (a) (2)) of said Act, to meet and assemble freely with other members and to express any views, arguments, or opinions; and that the action of defendant in disciplining plaintiff by depriving him of said employment for exercising his statutory rights is and was unlawful as being in violation of Section 609 (29 U.S.C. Section 529; 73 Stat. 541) of said Act.

11. Beard v. Stephens, 372 F.2d 685 (5th Cir. 1967). See also McGuire v. Baker, 421 F.2d 895, 898 (5th Cir. 1970); Baker v. F & F Investment, 420 F.2d 1191, 1193 (7th Cir. 1970).

12. See note 3. In this case Sewell was discharged on January 4, 1967; he com-

menced the present action on April 10, 1970.

13. Ala.Code Title 7, § 21 (1958).
Section 21. Limitations of six years.— The following must be commenced within six years:
* * * * *
Actions upon any simple contract or speciality, not herein specifically enumerated.

14. See Chambers v. Birmingham-Trust & Savings Co., 232 Ala. 609, 168 So. 893 (1936).

15. 218 Ala. 674, 120 So. 153 (1928). See also Marsh v. Southern Airways, 316 F.2d 91 (5th Cir. 1963).

16. Adler v. Miller, 218 Ala. 674, 675, 120 So. 153, 154 (1928).

17. If he relies on a contract there are no allegations that the contract is in writing. If the contract were oral, it might run afoul of the Alabama Statute of Frauds. If so, appellant could not rely on the Alabama Statute of Limitations to protect a void contract. For the Alabama Statute of Limitations to apply, appellant must allege and prove a valid contract under Alabama law. See generally: Tennessee Coal, Iron & Railroad Co. v. Sizemore, 258 Ala. 344, 62 So.2d 459 (1953); Grand International Brotherhood, etc. v. Couch, 236 Ala. 611, 184 So. 173 (1938).

the Union and employment by it in various capacities from time to time over a period of fifteen years. However, none of the terms, conditions, or provisions of the employment arrangement are set forth [18] and there does not appear to be any reliance on the terms of any particular contract. He does not allege whether the employment arrangements were oral or in writing; nor does he specify the period of employment, the specific duties to be performed, the authority of the employer, his own rights as an employee, or any other pertinent factors necessary to support an action based on contract.[19] Additionally, from the facts set forth above in this opinion, which are without any material dispute, it is quite clear that the basis of Sewell's alleged grievance is the claimed denial of rights protected by federal law. In view of the undisputed facts and the allegations in Sewell's complaint, it is our conclusion that his claim is essentially in the nature of a tort for the alleged violation of rights claimed under the Labor Management Reporting and Disclosure Act. Accordingly, we conclude that his cause of action is governed and barred by the Alabama Statute of Limitations of one year.[20]

### Insubordination

■ Even if Sewell's complaint was not barred by the statute of limitations, we are of the opinion that he should be denied relief. We fully concur with his contention that each member of a labor union is guaranteed the right of free expression as well as the right to participate freely in the union's democratic processes. Disciplinary action for the exercise of such rights offends the terms of the Labor Management Reporting and Disclosure Act. Moreover, the rights of free expression, and assembly as well as other rights protected by the statute may be exercised fully and freely by any member of the union; the mere fact that a member is an appointed or elected official of the union does not destroy his statutory rights.[21] This

18. In the *Nix* opinion it appears that Grand Lodge Representatives were assigned varying duties from time to time and that such duties were terminated and other duties assigned by executive officers of the Union. The Union is a large organization with headquarters in Washington, D. C. At one time there were eight administrative territories with an elected vice-president serving each territory. There were approximately 230 Grand Lodge Representatives, special representatives and press representatives. These representatives served the Union in the field or organizing, assisting local unions, handling grievances and negotiating contracts. They were under the direction of each regional vice-president. Their duties were to promote and execute the policies of the Union President and Executive Council at all times.

19. See Tennessee Coal, Iron & Railroad v. Sizemore, 258 Ala. 344, 62 So.2d 459 (1953) (quoting 17 C.J.S. Contracts § 544 p. 1177). See also Grand International Brotherhood, etc. v. Couch, 236 Ala. 611, 184 So. 173 (1938).

20. In reaching our conclusion we have given full consideration to the rule obtaining in this Circuit which frowns upon summary dismissal of complaints on purely technical grounds and favors the liberal construction of complaints. See Spalitta v. Nat'l. American Bank, 444 F.2d 291 (5th Cir. 1971); Merlite Land, Sea & Sky, Inc.' v. Palm Beach Invest., 426 F.2d 495 (5th Cir. 1970); Allen v. Johnson, 391 F.2d 527 (5th Cir. 1968).

21. Grand Lodge of Internat'l Ass'n. of Machinists v. King, 335 F.2d 340 (9th Cir.), cert. den. 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964); Fulton Lodge No. 2 of Int. Ass'n of Mach. & Aero. Wkrs., etc. v. Nix, 415 F.2d 212, 217–218 (5th Cir. 1969); Giordani v. Upholsterers Int. Union of No. Amer., 403 F.2d 85, 89 (2d Cir. 1968); Salzhandler v. Caputo, 316 F.2d 445 (2d Cir.), cert. denied 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963); Cefalo v. Int. Union of Dist. 50 United Mine Wkrs., 311 F.Supp. 946 (D.C.1970); DeCampli v. Greeley, 293 F.Supp. 746, 749 (D.N.J. 1968); Gulickson v. Forest, 290 F.Supp. 457, 464 (E.D.N.Y.1968).

As Judge Godbold indicates in Fulton Lodge No. 2 of Int. Ass'n of Mach. & Aero. Wkrs. v. Nix, *supra*, 415 F.2d at 217, especially n. 11, the cases indicate a distinction between union-employee and union-officer rights under the Act as compared with "union-member" rights. See

conclusion, however, does not permit an employee who accepts employment for the performance of certain specified duties to take the largesse and pay of the union, on the one hand, and, on the other, to completely subvert the purposes of his employment by engaging in activities diametrically opposed to the performance of his specified duties.[22] As Judge Bell observed in Airline Maintenance Lodge 702, etc. v. Loudermilk:[23]

> The rights of a union member under this statute. must be balanced against the right preserved to the union to make rules as to the responsibility of the member toward the union as an institution. And this balancing process must rest on the facts.

To permit an individual to accept union employment, to receive union pay, and to enjoy the prestige of a union position, while spending his employer's time opposing the plans and policies he was employed to execute, would in our judgment, be unreasonable. All employees, whether they work for a union or a large commercial company, may be required at times to subordinate personal expression to the responsibilities of their employment. An essential and elemental ingredient of all employment is basic loyalty by employees to the employer in performing the duties of the job for which they were hired.[24] If a conflict of interest arises between an individual's desire to oppose the plans and policies of his employer and the discharge of the duties of the position in which he is employed, fundamental considerations of fair play would require him to remove himself from such a position.[25]

To hold that a union has no right to discharge an employee for insubordination under the facts of his case would, we believe, seriously detract from effective, cohesive union leadership. The result might well be weak, ineffective

also Nelms v. United Ass'n of Journeymen & App. of Plumbing, 405 F.2d 715 (5th Cir. 1968) ; Saltzhandler v. Caputo, 316 F.2d 445 (2d Cir. 1963) ; Seeley v. Brotherhood of Painters, 308 F.2d 52 (5th Cir. 1962) ; Sheridan v. United Brotherhood of Carpenters, 306 F.2d 152 (3d Cir. 1962).

22. See: Nelms v. United Ass'n of Journeymen & App. of Plumbing, 405 F.2d 715 (5th Cir. 1968).

23. 444 F.2d 719 (5th Cir. 1971).

24. In N.L.R.B. v. Local Union No. 1229, 346 U.S. 464, 472, 74 S.Ct. 172, 176, 98 L.Ed. 195 (1953) Mr. Justice Burton speaking for the Court observed: "There is no more elemental cause for discharge of an employee than disloyalty to his employer." See also, e. g., Goldwasser v. Brown, 135 U.S.App.D.C. 222, 417 F.2d 1169, 1176 (1969) ; Gulickson v. Forest, 290 F.Supp. 457, 464 (E.D.N.Y.1968).

25. In Nix v. N.L.R.B., 418 F.2d 1001 (5th Cir. 1969) this court concluded:

> Petitioners contend that, even assuming Sewell was discharged because of his opposition to the amendment, his discharge still violates sections 8(a) (1) and 8(a) (3) for three reasons. They first contend that Sewell was exercising his membership rights as a member of IAM and cannot be discharged for exercising these rights. Under their contention, Sewell could oppose the amendment as an individual member of the IAM, even though as an employee of that union his duty was to support actively its passage. This contention seems to be without adequate foundation. Actual conflicts of interest arising from an individual's dual status as union member and employee may properly be resolved in favor of the employer's right to operate its business and to discharge employees for cause.

> The Union argues vigorously in this court that the issues presented in the instant case have already been adjudicated in our Nix decision. It relies on the principle of collateral estoppel and res judicata. See Blonder-Tongue Laboratories v. Univ. of Illinois Fd., 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) ; Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) ; Tampa Phosphate RR Co. v. Seaboard Coast Line RR Co., 418 F.2d 387 (5th Cir. 1969) ; Seguros Tepeyac, S. A., etc. v. Jernigan, 410 F.2d 718 (5th Cir. 1969) ; 1B Moore 633 ¶ 0.405 [3]. The record does not disclose that this issue was presented in the district court and therefore we decline to consider it here. See Barrett v. Browning Arms Co., 433 F.2d 141 (5th Cir. 1970) ; Nix v. N.L.R.B., supra, 418 F.2d at 1009.

and fragmented unions which would be paralyzed in bargaining for the rights and welfare of union members against the monolithic front of large commercial corporations in the modern commercial world. For this very reason it has long been the philosophy of collective bargaining and other vital union activities that the union representing the employees should be able to bargain on equal terms with employers whose economic interests are often diametrically opposed.[26]

Considering all the facts involved, it is our conclusion, limited to the particular facts and circumstances of this case, that the Union had the right to terminate the appellant's employment for insubordination.

Affirmed.

---

26. See Crown Central Petroleum Corp. v. N.L.R.B. 430 F.2d 724, 731 (5th Cir. 1970).