J. M. WOOD, Jr., et al., Plaintiffs-Appellants,

v.

Charles Leslie DENNIS, Defendant-Appellee.

No. 72–1182.

United States Court of Appeals, Seventh Circuit

Argued Sept. 13, 1972.

Reargued en banc June 1, 1973.

Decided Nov. 2, 1973.

Certiorari Denied March 4, 1974.
See 94 S.Ct. 1490.

Knoch, Senior Circuit Judge, dissented and filed opinion in which Fairchild, Circuit Judge, joined.

Warren C. Ingersoll, John J. Henely, Chicago, Ill., for plaintiffs-appellants.

Solomon I. Hirsh, Chicago, Ill., William J. Donlon, Rosemont, Ill., for defendant-appellee.

Before SWYGERT, Chief Judge, KNOCH, Senior Circuit Judge, and KILEY, FAIRCHILD, CUMMINGS, PELL, STEVENS, and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

Plaintiffs Wood, Bowers, and Lowry appeal from the dismissal of their complaint by the district court. The district court held that it lacked jurisdiction over the subject matter of the action under the Labor-Management Reporting and Disclosure Act of 1959, the Landrum-Griffin Act (29 U.S.C. § 401 et seq.), and that plaintiffs' membership rights in the union had not been violated. Further, the court found the complaint premature "because of plaintiffs' failure to invoke and exhaust required, reasonable, fair and adequate internal Union procedures and remedies."

The complaint contained four counts. All four counts relate to the removal of Lowry from his position as President of the Transportation-Communication Division (hereinafter "T-C Division") of the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees (hereinafter "BRAC") by defendant Dennis, the President of BRAC.

The allegations of the complaint indicate the following. Lowry, as President of the Transportation-Communication Employees Union, had negotiated a merger of that union with BRAC. Among the provisions of the merger agreement was one to the effect that the President of the T-C Division of BRAC would be elected independently by the Division's members and the Division "would continue to handle the affairs of the members of that Division on a basis almost completely the same as at present." Further, it was provided that the President of the T-C Division would be an International Vice President of BRAC and a member of the Executive Council and Finance Committee of BRAC. Lowry began to have disagreements with Dennis, the President of BRAC, as to the operation of the merger agreement. The complaint then alleges that by various acts, both direct and indirect, Dennis deprived Lowry of his duties and finally of his post entirely.

Count I of the complaint is brought by Wood and Bowers as members in good standing of the T-C Division of BRAC. They contend that the removal of the duly-elected President of the T-C Division constituted a violation of their membership rights protected by Section 101 (a)(1) of the LMRDA, 29 U.S.C. § 411 (a)(1),[1] in that their voting rights had been nullified. Jurisdiction was invoked under Section 102 of the LMRDA, 29 U.S.C. § 412.[2]

---

[1]. Section 101(a)(1), 29 U.S.C. § 411(a)(1), provides:

"(a)(1) Equal rights.

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organizations, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

[2]. Section 102, 29 U.S.C. § 412, provides:

"Civil action for infringement of rights; jurisdiction.

Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchap-

In Count II, plaintiff Lowry contends that his removal from office was discipline for his exercise of his rights as a member of the union, in that he had been "expressing his views, arguments and opinions with regard to the rights of the members of the T-C Division of BRAC guaranteed to them under the terms of the aforesaid Merger Agreement; and because plaintiff advised defendant on or around May 23, 1971, that plaintiff intended to become a candidate for the position of International President of BRAC at the expiration of the defendant's current term of office in 1975." This activity on the part of the defendant was alleged to violate Sections 101(a)(2) and 609 of the Act, 29 U.S.C. §§ 411(a)(2), 529.[3] Counts III and IV are pendent jurisdiction claims brought by Lowry for violation of the BRAC Constitution and malicious slander respectively. Inasmuch as we consider the issues presented by Count II to contain the most significance in the present appeal, as did the parties, we shall begin our analysis with that count.

The principal controversy between the parties is the question of how the language of Section 609 of the LMRDA should be construed. Plaintiff Lowry reads Section 609's prohibition "to fine, suspend, expel, *or otherwise discipline* any of its members for exercising any right to which he is entitled under the provisions of this Act" (emphasis added) as encompassing removal from a union office. Defendant Dennis contends that this court's construction of similar language in Section 101(a)(5), 29 U.S.C. § 411(a)(5),[4] which excluded from its purview protection of the right to hold union office, Air Line Stewards and Stewardesses Association v. Transport Workers Union, 334 F.2d 805, 808 (7th Cir. 1964), cert. denied, 379 U.S. 972, 85 S.Ct. 648, 13 L.Ed.2d 563 (1965), should be applied to the words "or otherwise discipline" in Section 609.

The gravamen of Count II of plaintiffs' complaint is the attempt to chill Lowry's Title I right of free speech and right to stand for office by the improper discipline of removing him from

ter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States for the district· where the alleged violation occurred, or where the principal office of such labor organization is located."

3. Section 101(a)(2), 29 U.S.C. § 411(a)(2), provides:
"(a)(2) Freedom of speech and assembly.
Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: `Provided,` That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would in-

terfere with its performance of its legal or contractual obligations."
Section 609, 29 U.S.C. § 529, provides:
"Prohibition on certain discipline by labor organization.
It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable in the enforcement of this section."

4. Section 101(a)(5), 29 U.S.C. § 411(a)(5), provides:
"Safeguards against improper disciplinary action.
No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

his union office. In our opinion, the claim of Count II does state a cause of action under the LMRDA. In reaching this conclusion, we join the numerous courts who have adopted the statutory interpretation enunciated in Grand Lodge of Int'l Ass'n of Machinists v. King, 335 F.2d 340 (9th Cir. 1964), cert. denied, 379 U.S. 920, 85 S.Ct. 274, 13 L. Ed.2d 334.[5] No point would be served by further extended exegesis on this subject as we regard Judge Browning's opinion for the Ninth Circuit to be an excellent analysis of the relevant legislative history.

*Air Line Stewards*, upon which Dennis relies, is clearly distinguishable, involving an issue not here present as to whether § 101(a)(5) precludes summary removal of a member from union office. Nevertheless, since the words "or otherwise discipline" were read by this court in *Air Line Stewards* as having a restricted meaning in § 101(a)(5) not including removal from union office, we initially find it necessary to consider the defendant's argument that the same words in another section, § 609 of the same statute, should perforce have the same meaning. This argument was presented to the court in *King*, and we agree with the Ninth Circuit that it is a plausible one. We also agree, however, with that court when it said, "[b]ut it is also common experience that identical words may be used in the same statute, or even in the same section of a statute, with quite different mean-

ings. And when they are, it is the duty of the courts to give the words 'the meaning which the Legislature intended [they] should have in each instance.' Atlantic Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 609, 76 L.Ed. 1204 (1932)." 335 F.2d at 344–345. (Other citations in accord in footnote omitted.) To the same effect, see the dissenting opinion in Alberto-Culver Company v. Scherk, 484 F.2d 611 at 618 (7th Cir. 1973).

The words of Mr. Justice Frankfurter are apposite: "[E]xact formulation of the issue before us is necessary to avoid inadvertent pronouncement on statutory language in one context when the same language may require separate consideration in other settings." Automatic Canteen Company v. Federal Trade Commission, 346 U.S. 61, 65, 73 S.Ct. 1017, 1020, 97 L.Ed. 1454 (1953).

The court in *King*, particularly noting the legislative gloss on § 101(a)(5), reached the same result with regard to that section as did this court in *Air Line Stewards*. The court then proceeded with an analysis of the different purposes and rationales of the two sections, which analysis we adopt without repeating it herein, and concluded that punishment of a member by removing him from office if the punishment was for the proper exercise of rights guaranteed under §§ 101(a)(1) and (2) was the subject of redress under the enforcement provision, Section 609. "Punishment for the exercise of these rights is prohib-

5. Schonfeld v. Penza, 477 F.2d 899 (2d Cir. 1973) ; Sewell v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers, 445 F. 2d 545 (5th Cir. 1971), cert. denied, 404 U. S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972) ; Navarro v. Gannon, 385 F.2d 512 (2d Cir. 1967), cert. denied, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968) ; Salzhandler v. Caputo, 316 F.2d 445 (2d Cir. 1963), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 ; Nix v. Fulton Lodge No. 2 of Int'l Ass'n of Machinists & Aerospace Workers, 78 LRRM 2915 (N.D.Ga. 1970), aff'd, 452 F.2d 794 (5th Cir. 1971), cert. denied, 406 U.S. 946, 92 S.Ct. 2044, 32 L.Ed.2d 332 (1972) ; Cefalo v. Int'l Union of District 50, United Mine Workers of Ameri-

ca, 73 LRRM 2964 (D.D.C.1970), aff'd, 73 LRRM 2970 (D.C. Cir. 1970) ; Gleason v. Chain Service Restaurant Employees Union, 300 F.Supp. 1241 (S.D.N.Y.1969), aff'd, 422 F.2d 342 (2d Cir. 1970) ; Retail Clerks Union Local 648 v. Retail Clerks Int'l Ass'n, 299 F.Supp. 1012 (D.D.C.1969) ; DeCampli v. Greeley, 293 F.Supp. 746 (D.N.J.1968) ; Gulickson v. Forest, 290 F.Supp. 457 (E.D. N.Y.1968) ; George v. Bricklayers, Masons and Plasterers Int'l Union, 255 F.Supp. 239 (E.D.Wis.1966) ; Etelson and Smith, Union Discipline Under the Landrum-Griffin Act, 82 Harv.L.Rev. 727, 735 et seq. (1969) ; Lew, Landrum-Griffin Protections Against Union Discipline, 13 N.Y.U.Law Forum 16, 50 et seq. (1967).

ited by section 609 whether inflicted summarily or after a full panoply of procedural protections." *King, supra,* 335 F.2d at 345. As indicated in *King,* this result is consistent with the legislative history.

Defendant also relies on Sheridan v. United Brotherhood of Carpenters & Joiners of America, Local No. 626, 306 F.2d 152 (3d Cir. 1962), which case the *King* court considered. As that court noted, 335 F.2d at 347 n. 31, Judge Kalodner's opinion in *Sheridan* was not joined in by the other two members of the panel. Judge Hastie concurred in the result upon a different ground and Judge McLaughlin dissented. *Sheridan,* therefore, represents the views of a single judge of the Third Circuit.

It is true the Third Circuit in Martire v. Laborers' Local Union 1058, 410 F.2d 32 (3d Cir. 1969), cert. denied, 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179, stated that it adhered to the ruling of *Sheridan*; however, the opinion was written by Judge Kalodner and did find a limited nexus between the Act-guaranteed rights of membership and the holding of union office. The decision would accord the right to utilize the remedies of the Act to assert the right to hold office in the future but would find the right nonexistent where the member was removed from office. Finally, it is noted that insofar as the latter matter is concerned, the court's *holding* was that the plaintiff did not have a remedy under § 101(a)(5) by reason of his removal from office. As has already been indicated herein, there is no disagreement on that issue among the courts.

But what is equally significant is that *Sheridan* relies, in no small part, on the fact that the "overriding purpose of the Labor-Management Reporting and Disclosure Act was to insure to members of unions the right to self-government and union democracy." 306 F.2d at 158. Thus, Judge Kalodner emphasized that the business agent had been removed from office by vote of the membership of the union. In the present case, however, we have the elected representative of the T-C Division being stripped of his office by the President of BRAC, his nominal superior. At least on such facts we find no compulsion to read the words "or otherwise discipline" in § 609 to exclude removal from office. See Etelson and Smith, Union Discipline Under the Landrum-Griffin Act, 82 Harv.L.Rev. 727, 737–38 (1969). The admirable goals of union democracy and free speech would not be furthered by reading into the broad concept implicit in "otherwise" a restriction that was legislatively mandated for valid and specific reasons for a separate subdivision of Title I. There is certainly no legislative history to indicate that officers forfeited their Title I rights to equal membership rights and free speech by the mere act of becoming union officials. The Congress when it started its task of revising this country's labor laws was well aware of what Representative Landrum referred to as "a significant lack of democratic processes in certain unions, that one-man dictatorships have thrived—in some instances for 20 to 30 years—and that through intimidation and fear, the rank-and-file union member has been deprived of a voice in his own union affairs." 105 Cong.Rec. 14342 (1959). Ultimately, it is not only free speech and union democracy, but the unions themselves, which will be aided by a decision allowing this limited right of action to remedy the injury of removal from union office when that removal is motivated by a desire to chill membership rights, such as the right of freedom of speech.

It is well at this point to look at the posture of the case as it is before us. We are not concerned with whether, upon an evidentiary hearing, Lowry will be able to prove his allegations regarding his removal from office as "otherwise discipline" because of his exercise of rights guaranteed by the Act, particularly those found in § 101(a)(2) pertaining to freedom of speech. The case before us concerns the dismissal of a complaint which adequately states a claim under the Act for which relief can be granted.

There is implicit in this record a procedural problem of possible donnybrook proportions, at least to those enjoying this type of exercise, which we do not conceive it profitable to pursue extensively. The motion to dismiss, possibly hedging the problem, was based both on lack of jurisdiction over the subject matter *and* on failure to state a claim upon which relief can be granted. The district court did not bypass the hedge. Although stating only the lack of jurisdiction in its conclusions of law, the court in its order dismissed for both reasons. The question is since § 102 gives federal jurisdiction to the district court, did the court mean in dismissing that it did not have jurisdictional power to adjudicate a claim of a member whose injury was to his officer status or that such claim did not state a claim upon which relief could be granted?

■■ In this situation we will adopt the words of Judge Lindley in Miles v. Armstrong, 207 F.2d 284, 286 (7th Cir. 1953):

"In this situation it was wholly immaterial whether the court dismissed the claim because it was insufficient to state a federal cause of action or whether, believing such to be the case, it dismissed the cause because it had no jurisdiction of the nonfederal action. Obviously, however, plaintiff's rights on appeal would exist in either instance."

In adopting this approach, we are not unmindful that guidelines for determination in the district court of the ruling on a Rule 12(b)(1) motion may substantially vary from those applicable to a Rule 12(b)(6) motion, Fed.R.Civ.P. 5 Wright & Miller, Federal Practice and Procedure § 1363, at 651 et seq. (1969). However, we are satisfied from our reading of the findings of fact and conclusions of law that basically the judge was of the opinion that the suspension of Lowry from office did not violate any membership right protected under § 101 (a)(2). To the extent that the court went into the merits of the suspension from office based upon affidavits, and irrespective of the extent to which affidavits may be considered in ruling on a motion to dismiss, the court erred. The matters were controverted, and summary judgment procedure which would have been involved in reliance upon the affidavits was not warranted.

■■ We note that the district court although basically deciding a question of law, which we hold it decided incorrectly, made a finding that "as a member Plaintiff Lowry is not precluded from speaking out in any manner on any issue concerning any union matter." This is true, but suppression of freedom of speech is not limited to noninterference with vocalization. Rights of communication cannot be so restricted as to be meaningless. Thus, denial of a park permit was not rendered proper because there were other but inconvenient places at which a person could speak. Collin v. Chicago Park District, 460 F.2d 746, 752 (7th Cir. 1972). Likewise, Lowry was possessed of an effective voice as an officer. It cannot be said that his freedom of speech as a member is unimpaired when that which made his speech effective is removed for improper disciplinary reasons.

The notion that the right of freedom of speech may be "chilled" is hardly open to dispute. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Dennis also contends that Lowry's complaint was filled with "conclusory allegations," which are not admitted on a motion to dismiss and was, therefore, insufficient. Although the complaint does not have the detail in it which might be possible in a case such as Schonfeld v. Penza, 477 F.2d 899 (2d Cir. 1973), where the history of intraunion strife was particularly extensive, the allegations in Count II are sufficient to survive a motion to dismiss in that they reveal the exact nature of Lowry's grievance and something of the mechanism by which defendant allegedly committed the wrong.

We are not unmindful of the fine line which must be drawn between what might be termed insubordination on the

one hand and freedom of speech on the other, a distinction involved in Sewell v. Grand Lodge of the International Association of Machinists and Aerospace Workers, 445 F.2d 545 (5th Cir. 1971), cert. denied, 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674 (1972). Although that case was in part disposed of on a statute of limitations point, Judge Gewin on behalf of the court also addressed himself to the secondary point:

"We fully concur with his contention that each member of a labor union is guaranteed the right of free expression as well as the right to participate freely in the union's democratic processes. Disciplinary action for the exercise of such rights offends the terms of the Labor Management Reporting and Disclosure Act. Moreover, the rights of free expression, and assembly as well as other rights protected by the statute may be exercised fully and freely by any member of the union; the mere fact that a member is an appointed or elected official of the union does not destroy his statutory rights. This conclusion, however, does not permit an employee who accepts employment for the performance of certain specified duties to take the largesse and pay of the union, on the one hand, and, on the other, to completely subvert the purposes of his employment by engaging in activities diametrically opposed to the performance of his specified duties." 445 F.2d at 550–551. (Footnotes omitted.)

Judge Gewin cited the *King* case in support of the recognition of retention of statutory rights by elected or appointed officials.

■ The determination that the statutory rights are not available because the disciplinary action was proper within the protective mantle of dealing with insubordination is a determination which should be reached only sparingly on a motion to dismiss. In *Sewell*, although there was a motion to dismiss which was sustained in the district court, the court on appeal had the benefit of substantial additional undisputed factual information including the facts found in a companion N.L.R.B. case. We are not so aided in the present case.

Another factor is present in this case which, insofar as we are aware, has not been given separate consideration but which is an aspect of the insubordination-speech issue and that is that Lowry was elected by the members of the division of the union. He was not ousted from that position by any democratic procedure but by the unilateral action of the president of the parent union who was not responsible for Lowry's officer status. That which could be ranked as insubordination would seem to equate more with the appointive official. Again, however, this is a matter which would be controlled by the particular facts which Lowry should be permitted, but was not, to develop.

■ Finally, Dennis relies on Lowry's failure to exhaust his internal union remedies before bringing suit. That the internal union remedies promise to be fruitless is reflected in the district court's opinion. Defendant Dennis appoints the hearing officer, who makes recommendations to defendant Dennis, who "will then carefully review the entire record and arrive at a determination and render a decision." After that, Lowry could avail himself of the appellate procedure in the union constitution. But that constitution, which the district court had before it on defendant's motion, revealed that it would not be until 1975 that Lowry could finally exhaust his internal remedies. The complaint itself also was quite specific in the need for immediate relief. These allegations reveal that plaintiffs' complaint was not merely conclusionary on the lack of an adequate internal remedy. "Here the complaint alleges in the clearest possible terms that a formal effort to pursue . . . administrative remedies would be absolutely futile. . . . [I]nsistence that petitioners exhaust the remedies administered by the union . . . would only serve to prolong the deprivation of rights to which these petitioners according to their allegations are

justly and legally entitled." Glover v. St. Louis-San Francisco Railway Co., 393 U.S. 324, 331, 89 S.Ct. 548, 552, 21 L.Ed. 2d 519 (1969). See Waters v. Wisconsin Steel Works of International Harvester Co., 427 F.2d 476, 490 (7th Cir. 1970), cert. denied, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151.

We turn now to Count I of the complaint. It is the contention of Wood and Bowers that the removal of Lowry from his position as President of the T-C Division violated their membership rights guaranteed by § 101(a)(1). Aside from this blanket allegation, however, there is little specificity as to which rights have been violated. We must read the complaint carefully to discover these plaintiffs' true theory. Reference is made to equal voting rights of plaintiffs in the International Executive Council, but such rights are more closely derivative from the union constitution than from the LMRDA, which protects direct, rather than indirect, electoral rights. The unarticulated premise of Count I appears to be that the membership rights of the union electorate are violated any time an elected union officer is removed from his position.

However, in Schonfeld v. Penza, *supra*, the Second Circuit indicated that the removal of an officer was not a sufficient basis in itself to support a direct action by a rank and file union member for violation of Title I membership rights to nominate and elect. The court cited Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), for this position. However, the court proceeded to hold that where the removal constituted a form of intimidation of the membership, a basis would exist for proceeding under Title I. The present case is distinguishable, lacking the extra factual basis adverted to in *Schonfeld*, 477 F.2d at 902–903.

While it is not entirely clear to us that *Calhoon* actually controls the issue of removal of an officer, we do not have to decide that point since it is clear that plaintiffs' theory goes beyond the protective limits of Title I. As noted above, it was expressly contemplated 'that officers would be subject to summary removal without the procedural safeguards guaranteed by § 101(a)(5). Summary removal is irreconcilable with the notion that members have an absolute right to their elected officials. In sum, we decline to extend the voting rights provisions of § 101(a)(1) to subsequent procedures not directly affecting the exercise of the guaranteed rights. We, therefore, affirm the district court's dismissal of Count I.

The fate of Counts III and IV will be dependent upon the course of litigation with regard to Count II.

For the reasons given hereinbefore, the judgment of the district court is reversed in part and remanded for further proceedings not inconsistent herewith.

Reversed in part, affirmed in part, and remanded.

STEVENS, Circuit Judge (concurring in the result).

The disposition of this case by the district court was somewhat unusual. On the basis of defendant's motion to dismiss, supported by affidavits, and without hearing evidence tendered by the plaintiffs at a preliminary hearing, the district court made "findings of fact" and dismissed the action for want of jurisdiction. I agree with the majority that the district court committed error. For two reasons, however, I am not prepared to adopt the rationale of the Ninth Circuit in *King*.[1]

First, although I certainly agree that the same words may have different meanings in different parts of the same statute, I am not persuaded that the phrase "to fine, suspend, expel, or otherwise discipline" in § 609 was intended to be any broader than the strikingly

---

1. Machinist Grand Lodge v. King, 335 F.2d 340 (9th Cir. 1964). The portion of the *King* opinion which holds that the definition of "discipline" in § 609 is broader than in § 101(a)(5) has not, as far as I have been able to determine, been followed by any other Court of Appeals prior to this decision.

parallel phrase "fined, suspended, expelled, or otherwise disciplined" in § 101(a)(5). One section deals with procedural safeguards and the other with impermissible grounds for discipline. If Congress had intended the coverage of the substantive protection to be significantly broader than the procedural provision—and certainly the *King* rationale identifies a most significant difference—I seriously doubt that the intent would have been expressed in such an obscure way.

Second, as I understand the *King* rationale—at least as it applies to Unions which have not adopted such speech-inhibiting regulations as may be permitted by the proviso to § 101(a)(2) [2]—the removal of an appointed union executive who publicly disagrees with the leadership of the union on questions of policy is prohibited. Patronage is by no means an essential attribute of democracy, see Illinois State Employees Union v. Lewis, 473 F.2d 561 (7th Cir. 1972), cert. denied 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed. 2d 590 but it is difficult to believe that Congress intended to address the patronage issue when it enacted the Landrum-Griffin Act in 1959. Had it done so, I am inclined to believe that appointed policy-making officials would have been subject to removal by their sponsors. See Sewell v. Grand Lodge, 445 F.2d 545, 551–552 (5th Cir. 1971). *Cf.* Illinois State Employees Union v. Lewis, *supra,* 473 F.2d at 574.[3] I therefore disagree with the view that the concept of "discipline" described in § 609 is substantially broader than in § 101(a)(5).

That disagreement does not necessarily lead to the conclusion that it is clear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80.

No issue under § 101(a)(5) has been raised by plaintiffs, presumably because it is clear under this court's holding in Air Line Stewards, et al. v. Transport Workers Union of America, 334 F.2d 805, 808–809 (1964), that Lowry's suspension pending a full hearing on the Union's charges is not "discipline" within the meaning of that section.[4] Even so, it is possible that additional acts of retribution may constitute discipline. See, *e. g.,* Martire v. Laborers' Local Union 1058, 410 F.2d 32, 35 (3rd Cir. 1969); furthermore, the important fact that defendant's actions were directed against an elected rather than an appointed officer may bring this controversy within the Second Circuit's rationale in Schonfield v. Penza, 477 F.2d 899 (1973). See Driscoll v. International Union of Operating Engineers, Local 139, et al., 484 F.2d 682 (7th Cir. September 11, 1973).

As presently framed, I am inclined to believe that the allegations are insufficient. But since the district court refused to permit the plaintiffs to present additional material for its consideration and dismissed the original complaint with prejudice, I agree that the judgment should be reversed and the case remanded for further proceedings.

KNOCH, Senior Circuit Judge (dissenting).

With regret I find myself unable to agree with my colleagues. The majority opinion, as did the opinions in *King* and *Air Line Stewards,* holds that Congress did not intend § 101(a)(5) to preclude summary removal of a member from Un-

---

2. See 335 F.2d at 346.

3. Since I do not believe Congress intended to address the patronage issue in this statute, I also doubt the validity of the implied exception permitting disciplinary discharges for "insubordination."

4. It may be worth noting that the risk of fiscal misconduct, which explains why the temporary suspension of a union officer is

not regarded as discipline within the meaning of § 101(a)(5), see the statement by Senator Kennedy quoted in *King,* 335 F.2d at 342, does not require or justify a narrow interpretation of the word discipline in other situations, including permanent removal, in which the officer is plainly being punished. Why a person occupying an office of trust should be less entitled to fair procedures than other citizens is difficult to understand.

ion office. *King* has been analyzed, however, as going on to hold that a claim was stated under § 609 on the theory that the words "otherwise discipline" in § 101 (a)(5) were not intended by Congress to include removal from office, but the same words were so intended in § 609. Otherwise, the Ninth Circuit reasoned, use of an effective weapon of reprisal against officers exercising rights guaranteed by the Act would have been immunized, without serving any apparent legislative purpose.

I think, basically, this is the thinking behind the decisions of the numerous courts to which the majority refers who have adopted *King* and that this fear dictates the majority's assertion that there is no legislative history to indicate that officers forfeited their Title I rights to equal membership rights and free speech by the mere act of becoming Union officials.

I do not question the cogent argument of the majority that the same words in different context may have different meanings, but I feel that insufficient consideration has been given to the complete legislative history of § 609.

There is apparently no. disagreement among the Courts that § 101(a)(5) provides a right to procedural due process only to members as members and that § 609 provides enforcement for rights set out in other portions of the Act. *King*, the majority here, and other decisions in conformity with *King*, adopt the position that if the same words are construed to have the same meaning in § 101(a)(5) and § 609, then officers would have no remedy against removal from office for exercising rights which would be protected for them as members, if they were not officers as well. These decisions all view such an interpretation as unreasonable, although none of these decisions seem to question the fact that § 609 is an enforcement provision only, which provides no additional rights.

Section 609 was originally proposed to allow civil enforcement through the Secretary of Labor (see 2 Legislative His-

tory of the Labor-Management Reporting and Disclosure Act of 1959, page 1567) but the section was subsequently amended to provide for individual members to bring actions in their own names only to meet certain objections of some members of Congress. (See 2 Legislative History, LMRDA, page 1662). Thus § 609 was in the process made virtually a duplicate of the provisions of § 102.

The gloss placed on the wording of § 609 by the Circuits following *King* is appealing, but I see us as adventuring beyond the intent of Congress in adopting the majority interpretation. Instead of leaving to legislative action the fashioning of a remedy for the evils envisaged by *King*, we are legislating by judicial fiat in the guise of interpretation. I would affirm the decision of the District Court.

FAIRCHILD, Circuit Judge, joins in the dissent of KNOCH, Circuit Judge.