**Thomas LUX et al., Plaintiffs-Appellants,**

v.

**Paul BLACKMAN et al., Defendants-Appellees.**

No. 76–1401.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1976.

Decided Dec. 6, 1976.

Curry First, Milwaukee, Wis., for plaintiffs-appellants.

Gerry M. Miller, James P. Maloney, Milwaukee, Wis., for defendants-appellees.

Before SWYGERT and WOOD, Circuit Judges, and GRANT, Senior District Judge.[1]

SWYGERT, Circuit Judge.

This appeal presents questions of interpretation of the Landrum-Griffin Act, 29 U.S.C. §§ 401–531: section 411(a)(1) and (2), the equal rights and freedom of speech provisions; section 411(a)(5)(C), the provision covering disciplinary actions of union members; and section 501, the provision respecting the fiduciary responsibility of officers of labor organizations.

In March 1972 plaintiff Thomas Lux was elected to a one-year term on the Nominating Committee of the Steelworkers Federal

---

1. The Honorable Robert A. Grant, Senior District Judge of the Northern District of Indiana, is sitting by designation.

Union, No. 19806, a Milwaukee local union affiliated with the American Federation of Labor and Congress of Industrial Organizations. Lux was reelected in March 1973 to an additional one-year term, and later he was appointed to the Milwaukee Labor Council. At the same time plaintiff James Siesennop was chairman of the local's Legislative Committee and a member of the Council.

Defendant Paul Blackman occupied the position of president of the local. In 1973, after he had learned that Lux and Siesennop had been affiliated with the Communist party prior to their becoming officers of the local, he brought charges against them for violating the union's constitution which provided that "no member shall serve as an officer . . . who is or who within the preceding five years has been a member of the Communist Party." Pursuant to the union constitution a trial took place before the Executive Committee of the local. The Committee acquitted the plaintiffs of the charges by a five to four vote. Subsequently the union membership directed the Executive Committee to reopen the trial for the purpose of introducing new evidence. Following the new trial the Committee upheld the charges by a five to four vote.

Although the union constitution required a two-thirds vote of the Executive Committee "to suspend, punish or expel a member," president Blackman ruled that the two-thirds vote provision did not apply to the removal of officers and that, in view of the vote on the retrial, the plaintiffs stood convicted of the charges. The plaintiffs were thereupon removed from their union offices.[2]

The plaintiffs then commenced this action under the provisions of the Labor-Management Reporting and Disclosure Act (LMRDA) for injunctive relief and damages. They sought by way of injunction reinstatement to the union offices from which they had been removed and accept-

ance of their nominations to new offices in the forthcoming elections.[3] As the result of an internal union appeal to the AFL–CIO parent organization, plaintiffs' claims regarding eligibility for future office were resolved in their favor, allowing them to run if they so chose. In their appeal to this court they concede that their claim for an injunction is moot. That leaves in issue only their claims for monetary damages, attorneys fees, and costs.

In the district court the defendants moved to dismiss the plaintiffs' complaint for failure to state a claim upon which relief could be granted and for lack of jurisdiction over the subject matter. The district judge issued a memorandum opinion and order dismissing the action. He ruled that the complaint failed to state a justiciable claim, "insofar as [it] challenges the procedure through which dismissal from union office was effected." In addition he held that the court lacked subject matter jurisdiction "to consider the propriety of the specific rules upon which eligibility for union office is conditioned." The plaintiffs then filed the present appeal.

Plaintiffs assert that the allegations of their complaint demonstrate (upon proof) that the defendants violated their LMRDA statutory rights enumerated in 29 U.S.C. § 411(a)(1) and (2), § 411(a)(5)(C), and §§ 501, 529. Jurisdiction was based on 29 U.S.C. §§ 412 and 529.

I

Plaintiffs contend that the local's president violated the union constitution by "usurping the decision and judgment" of the Executive Committee which had exonerated the plaintiffs. They also charge that this conduct denied them a full and fair hearing, and removed them from office by combining the "functions of charging party and ultimate decision maker in [the president]." Plaintiffs concede that our decision in *Airline Stewards and Stewardesses*

---

2. The union membership rejected plaintiffs' appeal on this issue.

3. At the membership meeting Lux and Siesennop were nominated for union officer positions. The defendants refused to accept the nominations.

*Ass'n. v. Transport Workers Union*, 334 F.2d 805 (7th Cir. 1964), is squarely against their claim that they were denied procedural due process as provided by section 411(a)(5)(C). In that case we held that the section refers only to union members—not officers—and that it protects members of a labor organization *qua* members but has no application to officers of the union *qua* officers. Plaintiffs ask us to overrule our prior decision. We decline to do so. We are in agreement with the district judge's statement: "[T]he plaintiffs were not entitled to a full and fair hearing as provided by § 411(a)(5). Union officers may be removed summarily. . . . [T]he procedural protections of § 411(a)(5) do not contemplate the removal of members from union office."

## II

 The plaintiffs next contend that the allegations of their complaint demonstrate a violation of section 411(a)(1) and (2). The primary allegations on which they rely are (1) Blackman's "violation" of the local union's constitution by ignoring the Executive Board's judgment, and (2) an "unlawful combination of functions" by Blackman. The plaintiffs' position is that their cause of action relates to "procedure": the manner in which Blackman "usurped" the Executive Board decision and "violated" the union constitution. The plaintiffs argue that Blackman's action denied them equal protection under section 411(a)(1) and, further, that their removal from office because of their political affiliation violated their freedom of expression under section 411(a)(2).

*Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964), answers plaintiffs' equal protection argument. There the Supreme Court interpreted section 411(a)(1) to mean *only* that union rules and eligibility requirements for holding office and nominating candidates must be applied uniformly to all members. "Plainly [§ 411(a)(1)] is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." 379 U.S. at 139, 85 S.Ct. at 295.

Here there are no allegations that plaintiffs were denied any rights that were granted all other union members to nominate and to vote for candidates for union offices and to hold union offices. These rights were subject to the limitation imposed on all members under the union constitution that candidates must not have been Communist party members within the past five years. Section 411(a)(1) speaks to those rights to nominate and to vote on equal terms among union members, subject to "reasonable rules and regulations" of the organization. The statute has nothing to do with the removal of officers, regardless of the nonregularity of their removal. Plaintiffs' argument implies that other members of the local who may hold union offices would not be treated as plaintiffs were treated; but they make no such allegation, and in any event our decision in *Airline Stewards* is a complete answer to their argument.

 Plaintiffs' claim under section 411(a)(2) of their right of freedom of expression is apparently based on president Blackman's actions effecting plaintiffs' removal from office, allegedly contrary to the provisions of the union constitution, and prompted by plaintiffs' prior membership in the Communist party. Defendants say that plaintiffs' claim is in reality a challenge to the eligibility requirements for union office and therefore does not constitute an actionable violation of section 411(a)(2). Plaintiffs on the other hand say that their case concerns removal from office and not denial of the rights to run. We think plaintiffs' claim relates to the eligibility for nomination to and holding of union office based upon the political affiliation of the officeholder. Such being the case, plaintiffs' recourse, if any, was not under Title I of the act but under Title IV.

Plaintiffs rely on *Wood v. Dennis*, 489 F.2d 849 (7th Cir. 1973), for support of their position. There, this court, following the Ninth Circuit decision in *Grand Lodge of the Int'l. Ass'n. of Machinists v. King*, 335 F.2d 340 (9th Cir. 1964), *cert. denied*, 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334 (1964),

concluded that punishment of a union member by removing him from office was the subject of redress under section 529 if the punishment was for the proper exercise of rights guaranteed under section 411(a)(2). In *Wood*, the particular activity consisted of the plaintiff's "expressing his views, arguments and opinions with regard to the rights of members of the . . . [Transportation Communication Division of the Brotherhood of Railway, Airline and Steamship Clerks, etc.] guaranteed to them under the terms of [a merger agreement between T–C and BRAC]. . . ." In *King*, the plaintiffs were summarily removed from their union offices because they allegedly supported an unsuccessful candidate in a union election. Thus, it can be seen that the facts of these cases were significantly different from the facts in the case at bar. In neither *Wood* nor *King* was the reason for the removal of plaintiffs from office a failure to meet the eligibility requirements for election to the office which they held.

■ *Driscoll v. International Union of Operating Engineers, Local 139*, 484 F.2d 682 (7th Cir. 1973) is more on point. There the plaintiff brought an action in the district court against his union seeking to force the local to discontinue a requirement that all candidates for union office sign a non-Communist affidavit. The plaintiff alleged a violation of section 411(a)(2), among other violations of LMRDA. We held that we were bound by the holding of *Calhoon v. Harvey, supra*, that "disputes . . . basically relating as they do to eligibility of candidates for office fall squarely within Title IV of the Act and are to be resolved by the administrative and judicial procedures set out in that Title." 379 U.S. at 141, 85 S.Ct. at 296. The district judge did recognize one significant difference: "Unlike the situation in *Driscoll*, the applicability and relevance of the Union anti-Communist provision here did not become known [to the defendants] until the plaintiffs were already installed in office. Thus, the plaintiffs' challenge to the [ineligibility] rule comes not before the election, but only after they were in office and the rule was

applied against them." The judge then ruled that despite this difference, the instant case was not materially distinguishable from *Driscoll*. He explained:

Article IV of the union constitution is entitled 'Offices-Nominations-Elections.' Section 8 deals exclusively with qualifications for nomination and office and does not interfere with the rights of a union member *qua* member. It does not bar the plaintiffs from expressing their present or past beliefs, at least any more than did the affidavit requirement in *Driscoll*.

Plaintiffs insist that they are without remedy under §§ 481 and 482 of Title 29 (the Title IV remedies) because those sections deal with only pre-election violations. But if plaintiffs are correct that the union's anti-communist rule is itself invalid, it was invalid whether involved before their election or after it. The post-election discovery that the plaintiffs were in violation of the rule does not create a material distinction. The rule creates a pre-election standard regardless of when the violation was formally charged.

We are in agreement with Judge Warren's analysis and holding. Plaintiffs knew of the union rule and of their ineligibility at the time of their nomination. They may not "lie in the weeds" and wait until after their election to assert their rights under section 411(a)(2). To allow them to do so would fracture the interdependent provisions of the act.

### III

■ The plaintiffs contend that, although their claim does not relate to financial mismanagement or misappropriation, it nonetheless involves a violation of section 501 of the act, which reads in part: "The officers . . . of a labor organization occupy positions of trust in relation to such organization and its members as a group." Plaintiffs say that Blackman's actions in removing them from office violated his "position of trust and other responsibilities" under section 501. The actions complained

of are the same as those alleged in violation of section 411(a)(5). To decide this issue we do not think it is necessary to explore the full reach of section 501. We are convinced that the provision has no application whatever to the facts of this case. *Gurton v. Arons*, 339 F.2d 371 (2d Cir. 1964); *Coleman v. Brotherhood of Ry. & Steamship Clerks*, 340 F.2d 206 (2d Cir. 1965); *Yanity v. Benware*, 376 F.2d 197 (2d Cir. 1967), *cert. denied*, 389 U.S. 874, 88 S.Ct. 167, 19 L.Ed.2d 158.

The district court's dismissal of the action is affirmed.