## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## LOCAL 212, INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), Respondent.

### No. 81–1695.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 25, 1982.

Decided Oct. 8, 1982.

Elliott Moore, Deputy Associate Gen. Counsel, Carol De Deo, N. L. R. B., Washington, D. C., for petitioner.

William Mazey, Rothe, Mazey, Mazey & Hamburger, Southfield, Mich., for respondent.

John A. Fillion, Gen. Counsel, Leonard R. Page, Assoc. Gen. Counsel, Detroit, Mich., for amicus curiae.

Before MARTIN and KRUPANSKY, Circuit Judges, and NEESE,* District Judge.

PER CURIAM.

The National Labor Relations Board seeks enforcement of an order entered against Local 212, International Union,

United Automobile Aerospace and Agricultural Implement Workers of America (UAW). 257 N.L.R.B. 90 (1981). The Board found that Local 212 committed an unfair labor practice by removing Melvin Nance from his position as chairman of the Fair Employment Practices Committee after Nance filed unfair labor practice charges against the Union. 29 U.S.C. § 158(b)(1)(A). Nance complained to the Board that he had encountered resistance from union officials while attempting to process a grievance submitted to his Fair Employment Practices Committee.

The facts are in some dispute. Nance is an employee of Chrysler Corporation's Vernor Tool and Die Plant in Detroit, Michigan. From May 1978 until October 4, 1979, Nance was the chairman of the Union's Fair Employment Practices Committee. As chairman, he was responsible for investigating and reporting on employee claims of discrimination on the basis of race, sex, or handicap. This investigation was to occur in step two of the grievance procedure outlined in the contract between Chrysler and Local 212.

Pursuant to the grievance procedure, Nance investigated the complaint of employee William Adams regarding his discharge. The stated reason for Adams' discharge was absenteeism, but Nance felt that the company had taken this action because Adams was an alcoholic. Nance believed that under the Michigan Handicapped Civil Rights Act, alcoholism is a protected handicap. Mich.Comp.Laws Ann. § 37.1101 *et seq.* (1977). Nance attempted to review the records of other employees to determine whether the company had disciplined others in a similar fashion. He furnished a list of these individuals to the head of Labor Relations at the plant and discussed the situation with several union officials.

Thereafter, Nance encountered delay and opposition in his attempt to obtain assistance from union officials, including Presi-

* Honorable C. G. Neese, United States District Judge for the Eastern District of Tennessee, sitting by designation.

dent Joe Zappa, Vice-President Sam Weary, and Administrative Assistant Don Britton. Nance requested that the Union support his efforts and Britton, the official in charge of contacting the Vernor plant, refused to cooperate.

On September 25, 1979, Nance filed an unfair labor practice charge on Adams' behalf and at his request. On October 4, 1979, President Zappa called a meeting of union officials and told them that he was removing Nance from the Chairmanship of the Fair Employment Practices Committee. According to the testimony of other officials, Zappa stated that the reason for Nance's dismissal was his charge with the Board. Weary later told Nance that he was being removed for filing the charge. Nance admitted that he did not use the Union's appeal procedure which allows members to challenge actions, decisions, or penalties imposed by the Union. After this confrontation, Nance withdrew the charge which he had filed on Adams' behalf and substituted his own complaint.

■ The Supreme Court has held that a union violates Section 8(b)(1)(A) by disciplining a member for filing an unfair labor practice charge against it. *NLRB v. Industrial Union of Marine and Shipbuilding Workers,* 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968). Moreover, the member need not exhaust internal union remedies with respect to the complaint. 391 U.S. at 428, 88 S.Ct. at 1723. While the Union has a legitimate interest in internal organization and discipline, the public has an interest in the access of individual members to the Board. As the Supreme Court noted,

> there should be as great a freedom to ask the Board for relief as there is to petition any other department of government for redress of grievances. *Any coercion used to discourage, retard or defeat that access is beyond the legitimate interests of a labor organization. . . .* [W]e agree that the overriding public interest makes unimpeded access to the Board the only healthy alternative, except and unless plainly internal affairs of the union are involved.

391 U.S. at 424, 88 S.Ct. at 1721 (emphasis added) (footnote omitted).

■ Our standard of review is whether there is substantial evidence in the record supporting the Board's decision. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Credibility determinations are for the Board. *NLRB v. Rawac Plating Co.,* 422 F.2d 1259, 1260 (6th Cir. 1970). In the present case, our review of the facts reveals substantial evidence to support the Board's decision directing the Union to reinstate Nance as chairman of the Fair Employment Practices Committee.

In its brief, the Union concedes that Nance was removed because he filed the charge. In fact, one of the Union's main defenses is that it was entitled to remove Nance because a Union has "the right to remove an appointed official who ignores his duty to represent the Union by filing a meritless charge that disparages the Union he had a duty to serve." That reasoning is unpersuasive in the present case.

■ On appeal, the Union advances three arguments. First, it contends that the Board impermissibly invaded the Union's internal workings as described in *NLRB v. International Brotherhood of Boilermakers,* 581 F.2d 473 (5th Cir. 1978). We disagree. In *Boilermakers,* the union official filed a charge against the company in derogation of the grievance procedure in the collective bargaining agreement. The *Boilermakers* court noted that

> the discharge of a union officer for filing a charge against his *union* might be a less "plainly internal affair" than the present case because we might be less able in that case to conclude confidently that the union's disciplinary interest was in cohesive leadership rather than in using that pretext to cloak a device to prevent effective relief for intra-union grievances.

581 F.2d at 476 (emphasis in original). We agree and find that the Union's first argument is without merit.

Secondly, the Union asserts that Nance's action was unprotected because the Board

did not issue a complaint on Nance's original charge. This position is without merit. "[T]he Board need not find the complaints to be meritorious in order to hold the activity protected...." *NLRB v. Interboro Contractors, Inc.*, 388 F.2d 495, 500 (2d Cir. 1967). Indeed, the NLRB dismissed the original charge in *Marine and Shipbuilding Workers. Id.* at 420, n.2. "Employees, whether right or wrong, have the right to invoke the processes of the Board." *Selwyn Shoe Manufacturing Corp.*, 172 N.L.R.B. 674, 682 (1968), *modified on other grounds,* 428 F.2d 217, 218 n.1 (8th Cir. 1970). *See Local 138 International Union of Operating Engineers (Charles S. Skura),* 148 N.L.R.B. 679, 680–82 (1964).

■ In the present case, the administrative law judge and the Board found that Nance *had* made a good faith attempt to represent Adams and that Nance filed the charge in the sincere belief that the Union had violated Adams' rights. That finding protects Nance's activity. *NLRB v. Interboro Contractors, Inc.*, 388 F.2d at 500.

■ Finally, the Union contends that Nance's dismissal did not constitute "discipline" because he lost neither salary nor seniority. This argument also is without merit. The Board held that the Union's action was coercive because it reasonably tended to coerce or restrain employees in the exercise of rights protected under the Act. We have no doubt that the practical result of Nance's removal was to "chill" the willingness of other union members to file charges with the Board. *See NLRB v. Service Employees International Union, Local 254,* 535 F.2d 1335, 1337–38 (1st Cir. 1976).

The International Union, UAW, has filed an Amicus Curiae brief in which it contends that the decision in this case is governed by policy considerations in the Supreme Court's recent decision in *Finnegan v. Leu,* —— U.S. ——, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). We disagree.

The Court decided *Finnegan* under the Labor-Management Reporting and Disclosure Act, Sections 101(a)(1) and (2), 29 U.S.C. §§ 411(a)(1) and (2). In that case,

the Supreme Court upheld our decision that this section of the statute did not prevent a newly elected union president from appointing new officers to replace those who campaigned against him. "Nothing in the Act evinces a congressional intent to alter the traditional pattern which would permit a union president under these circumstances to appoint agents of his choice to carry out his policies." *Finnegan v. Leu,* —— U.S. at ——, 102 S.Ct. at 1873, 72 L.Ed.2d at 248.

Nowhere in *Finnegan* do we find support for the concept that a union president may remove a union official for filing an unfair labor practice charge. On the contrary, we believe *Finnegan* applies only to a situation in which a union president selects officials to work with him and implement his policies. *Finnegan* deals with the LMDRA and retaliation for election activities; it does not in any way diminish protection for concerted activity under the Wagner or Taft-Hartley Acts.

Accordingly, the order of the National Labor Relations Board is enforced.