NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

IRON WORKERS UNION, LOCAL
433, Respondent.

No. 84–7823.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 14, 1985.

Aug. 9, 1985.

Elliott Moore, Howard Perlstein, Washington, D.C., for petitioner.

David A. Rosenfeld, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for respondent.

Before BROWNING, ANDERSON and NELSON, Circuit Judges.

NELSON, Circuit Judge:

The National Labor Relations Board ("the Board") seeks enforcement of its order issued against the Iron Workers Union, Local 433 ("the Union"). The Board found that the Union violated sections 8(b)(1)(A)

and 8(b)(2) of the National Labor Relations Act ("the Act") by refusing to list employee Lester Sisson for referral from its Las Vegas hiring hall because he owed dues to his local union in Omaha, Nebraska. The Board also found that the Union violated section 8(b)(1)(A) by telling Sisson that satisfaction of his Omaha dues arrearage was required in order for him to stay registered for referral from the Union's Las Vegas or Los Angeles hiring halls. Stating that it does not challenge the Board's factual findings, the Union maintains that the Board's decision is legally incorrect. The Union also argues that the Board abused its discretion in failing to defer this case to the contractual grievance procedure.

Because the Board correctly applied the law, because substantial evidence supports its findings, and because it did not abuse its discretion in not deferring, we enforce its order in full.

### FACTUAL AND PROCEDURAL BACKGROUND

The Union represents a bargaining unit of ironworkers who work in Southern California and Southern Nevada. The Union is a member of the District Council of Iron Workers of the State of California and Vicinity, which is party to a multi-employer master bargaining agreement with the California Ironworker Employers Council, an association composed of several construction companies based in either California or Nevada.

Under the master agreement, the Union maintains hiring halls in Los Angeles and Las Vegas that serve as exclusive referral sources for those employers who need workers within the Union's jurisdiction. The same agreement contains a union security clause which provides that current members of the Union must maintain their membership and nonmembers must become members after a grace period. Notwithstanding this union security provision, it is the Union's practice to allow workers who are members of another local affiliated with the international union to pay "travel service dues" to the Union in lieu of paying regular Union fees and dues.[1]

Lester A. Sisson, a journeyman ironworker, was a member of Iron Workers Local 21 in Omaha, Nebraska ("Omaha local"). Sisson began working out of the Union's Los Angeles hiring hall in September 1977 as a "traveler." In January 1978, the Omaha local suspended his membership because of a failure to pay dues. Sisson never informed the Union of this suspension, and continued to pay travel service dues and to be referred through the Union's Los Angeles hall. By continuing in "traveler" status, Sisson paid $2.50 per week in dues to the Union, as opposed to the Union's regular $17.50 per month dues, and avoided paying the Union's $500 initiation fee. In late 1981, Sisson was elevated to the Union's highest dispatch priority (the "A-list") because of the number of years he had worked in the Union's jurisdiction. Sisson continued to get hiring-hall referrals from the A-list, and continued to pay only "traveler" dues, until September 1982.

On September 14, 1982, having recently moved to Las Vegas, Sisson went to the Union's hiring hall there. He asked to have his name placed on the A-list and showed his current travel service dues receipt from Los Angeles. The Union's business agent, Fred Toomey, asked Sisson for a current membership dues receipt from his Omaha local. Sisson made some excuses and left; he was never placed on the A-list. Toomey testified before the Administrative Law Judge ("ALJ") that he told Sisson that he would be placed on the A-list if he produced a receipt showing he had paid his Omaha dues.

Toomey subsequently contacted Sisson's Omaha local and learned that he was in arrears. Toomey then called Joe Ward, the Union's Los Angeles business agent, and told him that "Sisson had been passing himself off for years as a paid-up member of a sister local." Sisson called Ward on November 4, 1982, to enlist his help in

---

1. The legality of the "traveler" system is not at issue in this case.

getting on the Las Vegas A-list. Their conversation then turned to the subject of Sisson's referral status if he returned to Los Angeles. The Board found that Ward effectively told Sisson that he would have to pay his Omaha local dues before he could be restored to the A-list in either Los Angeles or Las Vegas. Sisson asked Ward if he could instead get "reinstated in 433 [the Union]" but Ward insisted that he had to get reinstated in Omaha.[2]

Sisson filed a complaint with the Board, and the case came before the ALJ. He concluded that the Union (through Toomey) had violated section 8(b)(2) and, derivatively, section 8(b)(1)(A) of the Act by refusing on and after September 14 to register and give referral consideration to Sisson from its A-list in Las Vegas, and had violated section 8(b)(1)(A) based on Ward's remarks to Sisson on November 4 that he must correct his dues arrearage "with a sister local not a party to the contractual bargaining unit" as a condition of registration and referral from either the Los Angeles or Las Vegas A-list.

The ALJ's decision was affirmed by a three-member Board panel, which by a two-to-one vote adopted his rulings, findings, and conclusions. 272 N.L.R.B. No. 83 (1984). The Board explained that "Sisson had to be accorded the statutory grace period [applicable under section 8(f) of the Act to union-security clauses] in the Los Angeles/Las Vegas bargaining unit before he could be denied referrals in that unit's area of work." The Board said that it was clear from the record that the Union "at all times made Sisson's referral contingent on his satisfying his dues obligations in another local" outside the Union's bargaining unit, which established a violation of the Act.

The Board's order requires the Union to desist from "refusing, or threatening to refuse, to register and refer Lester A. Sisson on and from A-lists in its [Las Vegas and Los Angeles hiring halls] because Sisson is in bad standing linked to dues arrearages with a sister local union which is not a party to the bargaining unit in which Sisson seeks work referrals," and from restraining or coercing employees in any like manner. The Union is affirmatively required to notify Sisson that he is entitled at his option to register and be referred from the Las Vegas and Los Angeles A-lists, and to make him whole for any loss of pay he may have suffered because of the Union's actions "from the date of the Union's unlawful conduct until he obtains the employment he would have had were it not for such conduct, or substantially equivalent employment elsewhere." Additionally, the Union must post copies of the order at its Las Vegas and Los Angeles hiring halls. The Board now petitions this court for enforcement of its order.

## STATUTORY FRAMEWORK

Section 8(b) of the Act provides, in pertinent part, that it is an unfair labor practice for a labor organization or its agents

(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in [section 7]: *Provided,* That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein; ....

(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership....

29 U.S.C. § 158(b).

Section 7 of the Act provides that employees have the right to engage in con-

---

**2.** The Board interpreted Sisson's offer to become "reinstated" in the Union as an offer to join the Union, if necessary, to be placed on the A-list. Thus, concluded the Board, Ward and Toomey were not simply telling Sisson that he had to pay his Omaha dues to retain "traveler" status; they were requiring him to do so in order to be placed on the A-list at all. Substantial evidence supports the Board's finding on this issue.

certed activities for mutual aid or protection, and the right to "refrain from any or all such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in [section 8(a)(3)]." 29 U.S.C. § 157. Section 8(a)(3) allows an employer to make an agreement with a labor organization to require "as a condition of employment" membership in a union "on or after the thirtieth day following the beginning date of such employment or the effective date of such agreement," whichever is later. 29 U.S.C. § 158(a)(3) Section 8(f) further provides that an employer "engaged primarily in the building and construction industry" does not violate sections 8(a) or (b) by making an agreement with a labor organization to require "as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment or the effective date or the agreement, whichever is later." 29 U.S.C. § 158(f).

## DISCUSSION

### I. The Unfair Labor Practices

#### A. *Standard of review*

We will enforce the Board's order if its factual findings are supported by substantial evidence in the record as a whole and it has correctly applied the law to those facts. *Sheet Metal Workers Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742 (9th Cir.1985).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). A reviewing court should not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Universal Cam-*

*era Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

"The Board's interpretation of the Act is entitled to deference, and will be upheld if reasonably defensible." *NLRB v. Carpenters Local Union No. 35*, 739 F.2d 479, 482 (9th Cir.1984) (citing *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979)).

#### B. *Analysis*

The Board stated that because "the Union relied on the dues arrearage arising in another local to refuse to refer Sisson," the doctrine of *Millwright and Machinery Erectors, Local 740 (Tallman Constructors)*, 238 N.L.R.B. 159 (1978) (*"Tallman"*) is "clearly applicable." To support its conclusion, the Board also cited *Iron Workers Local 118 (Pittsburgh Des Moines Steel Co.)*, 257 NLRB 564 (1981) (*"Pittsburgh Des Moines Steel"*), enforced per curiam, 720 F.2d 1031 (9th Cir.1983). As the lone Board dissenter stated, these cases stand generally for the proposition that "a union cannot deny employment to a member with a dues delinquency arising under a contract covering a different bargaining unit unless the union first gives that member the statutory grace period to cure the delinquency."

In essence, the Union's main contention is that the Board erred in applying the *Tallman* doctrine to this fact situation. The Union argues that the critical inquiry is not whether the dues are owed to a local outside the bargaining unit, but whether the dues arrearage arose during employment within the bargaining unit. Here, Sisson's arrearage arose in 1978, while he was working as a "traveler" in the Union's jurisdiction. The Union asserts here that had Mr. Sisson been a suspended member in Omaha *before* he left and worked under the multi-employer bargaining agreement which is the subject of this case, a different factual pattern would be presented. If that were the situation, the Union says, Sisson would have indeed incurred the dues obligation "outside of the bargaining unit to which he 'travels.'" The Union main-

tains that "the locus of the payment of the financial obligation" is of "no concern to the Board."

While this argument has some appeal, prior Board precedent supports the application of the *Tallman* doctrine to this fact setting. It is true that *Tallman* itself appears to focus on the place of employment at the time the arrearage occurred. *See* 238 N.L.R.B. at 160–61 ("[A] union's demand for the payment of back dues which arose during a period when there was no contractual obligation to maintain membership in the union *or during a period when the employee was not employed in the bargaining unit* cannot lawfully be imposed as a condition of employment.") (emphasis added). However, the Board extended the *Tallman* doctrine in *Pittsburgh Des Moines Steel,* which the Board cited in its decision here. In *Pittsburgh Des Moines Steel,* the Board said that

> a member *who has become delinquent in dues under a contract covering one bargaining unit cannot be denied employment under a contract covering another bargaining unit* without affording him the statutory grace period in which to become current in his or her dues.

257 N.L.R.B. 564, 566 (emphasis added) (citing *Tallman* and *William Blackwell, d/b/a Carolina Drywall Co.,* 204 N.L.R.B. 1091 (1973)). Thus, it appears that the Board's prior interpretation of the *Tallman* doctrine is consistent with its decision here: that a Union may not deny employment to an employee because of a dues arrearage owed to another local outside the bargaining unit. Other cases are consistent with this reading. *See Iron Workers, Local No. 433,* 266 N.L.R.B. 154, 157 (1983) ("It is well settled that unions cannot lawfully require an employee to satisfy a dues arrearage incurred in one bargaining unit as a condition precedent to employment in a different unit."), *enforced mem.,* 730 F.2d 768 (9th Cir.1984).

In summary, the Board's interpretation of the Act here is "reasonably defensible." *See NLRB v. Carpenters Local Union No.*

*35,* 739 F.2d 479, 482 (9th Cir.1984). Therefore, we choose not to disturb the Board's determination that Ward and Toomey could not lawfully force Sisson to pay dues to his Omaha local as a condition of being placed on the A-list for referrals, since the Omaha local is not in the Union's bargaining unit, without allowing him the proper grace period in which to satisfy the Union's regular dues requirements. Nor do we disturb the Board's determination that Ward unlawfully restrained and coerced Sisson in violation of section 8(b)(1)(A) when Ward told him that he would have to satisfy his Omaha dues arrearage in order to be placed on the A-list.

## II. The Board's Decision Not to Defer

### A. *Standard of review*

The Board's decision not to defer to the contractual grievance procedure is reviewed for an abuse of discretion. *See, e.g., Ad Art, Inc. v. NLRB,* 645 F.2d 669, 674 (9th Cir.1980) (Board refusal to defer to arbitral finding); *NLRB v. Safeway Stores, Inc.,* 622 F.2d 425, 428 (9th Cir.1980) (review of Board decision not to defer to arbitration "limited to whether the Board abused its discretion in reaching its deferral decision"), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). The Board's decision will not be disturbed unless the Board clearly departed from its own standards or its standards are themselves invalid. *Safeway Stores,* 622 F.2d at *id.* (citing *Hawaiian Hauling Services, Ltd. v. NLRB,* 545 F.2d 674, 676 (9th Cir. 1976), *cert. denied,* 431 U.S. 965, 97 S.Ct. 2921, 53 L.Ed.2d 1061 (1977)).

### B. *Analysis*

The Board has previously declined to defer to *this particular* contractual grievance procedure in situations "where the interests of the aggrieved employee are in apparent conflict with the interests of the parties to the contract." *Iron Workers, Local No. 433,* 266 N.L.R.B. 154, 162 (1983), *enforced mem.,* 730 F.2d 768 (9th Cir.1984). *Accord, Iron Workers, Local No. 433,* 228 N.L.R.B. 1420, 1439–40 (1977),

*enforced,* 600 F.2d 770 (9th Cir.1979), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1275, 63 L.Ed.2d 599 (1980).

Here, there can be little doubt that Sisson's interests are "in apparent conflict" with the Union's. Thus, the Board's decision here not to defer represents faithful adherence to its prior standards, which have been upheld by the courts. The Board has held that where

> the aggrieved party was opposed to the position of the Union, and there was no assurance that the representatives of the employers or the Union, who together with an impartial umpire, composed the appellate tribunal ... would fairly represent the aggrieved party ... the issue should not be deferred to arbitration.

266 N.L.R.B. at 162 (quoting 228 N.L.R.B. at 1439–40).

The Union's attack on the Board's decision is unpersuasive. The Union argues that the composition of the tribunal guarantees impartiality, and that "there is no evidence that any person designated to the [tribunal] by an employer would be hostile to Mr. Sisson." In the earlier *Local 433* cases, the Board rejected the Union's virtually identical contentions. Under these circumstances the Board's deferral decision here cannot be said to represent an abuse of discretion.

## CONCLUSION

The Board properly applied the *Tallman* doctrine to this situation, where the Union required an employee to pay back dues to a local not in the Union's bargaining unit as a condition of being placed on its hiring hall referral lists. The Board's findings, to the extent they are challenged, are supported by substantial evidence in the record as a whole. Furthermore, the Board did not abuse its discretion in not deferring to the contractual grievance procedure when the aggrieved employee's interests are opposed to those of the Union.

The Board's order is ENFORCED.